Andrew SINOVICH, Plaintiff-Appellant,

v.

ERIE RAILROAD COMPANY, Defendant-Appellee.

No. 11732.

United States Court of Appeals Third Circuit.

Argued Jan. 17, 1956.

Decided March 5, 1956.

Edward J. Madden, Jersey City, N. J. (Samuel M. Cole, Jersey City, N. J., on the brief), for appellant.

Arthur J. Blake, Jersey City, N. J. (Emory, Langan & Lamb, Charles W. Broadhurst, Jersey City, N. J., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., suit, appellant, plaintiff in the district court, was awarded a $4,000 jury verdict on June 23, 1955. He appeals from the judgment entered.

The involved accident occurred March 26, 1952, about 5:45 P.M. in Jersey City, New Jersey, on a covered pier owned by the appellee railroad. At that time appellant was about sixty-one years old. He was a freight handler for the Erie and had been employed by it approximately forty-one years. While he was leaning against an iron supporting column waiting for some railroad cars to be put on the dock a motorized hauling and lifting machine called a "Hi-Lo" ran into a four wheeled truck standing near him and pushed it against him. The truck struck his left lower leg crushing it against the column. The left rear of his head also hit the column. X-rays revealed moderately comminuted fractures of both bones of his lower left leg. His hospital entrance note of 7:30 P.M. that night reads: "Leg splintered at the scene of injury." He was confined to the hospital for four months, then to his bed at home for a month and to the house for a short period after that. He was left with a slight medial angulation of the tibia.

From about 1949 appellant had been afflicted with Parkinson's disease which, by his testimony, had not interfered with his work in any way. He said that prior to the accident there had been a very little shaking of his right hand and right leg. He returned to work September 1, 1952. His duties thereafter consisted of sweeping and cleaning the dock with "a little work on the side" but no heavy lifting. He stated that on October 27, 1953, he was retired as totally disabled. He incurred a conceded wage loss of $1650.

Asked if he had any present complaints as a result of his accident he answered "Yes. I complain about my shakes, it shakes me too much, and my foot—my leg hurts me." Dr. Joseph S. Rechtschaffen, who had examined the plaintiff and who had treated a great number of Parkinson's disease patients in plaintiff's age bracket, stated that Sinovich had characteristic symptoms of an advanced stage of that condition and that the trauma he had sustained in the accident had accelerated and aggravated the progress of the disease.

At the end of the plaintiff's case, the defendant railroad admitted liability. On the question of damages it offered medical testimony regarding the leg injury, its results and in contradiction of any connection between the accident and aggravation of the Parkinson's disease. The trial judge charged the jury that plaintiff was entitled to a fair and just verdict, but only for those injuries which were proximately caused by the accident. He correctly dealt with the contested question of the relationship of the aggravation of the Parkinson's disease to the accident. The jury returned a verdict in favor of the plaintiff and against

the railroad in the sum of $4,000. Less his actual wage loss, and eliminating entirely the alleged aggravation of the Parkinson condition, this gave the plaintiff $2,350 for his splintered left lower leg, his four months in the hospital, his pain and suffering, whatever permanent condition of the leg the jury found and future loss of earnings, if any, ascribable to injuries received in the accident.

In the light of the above damages, concerning which there is little or no conflict, and having in mind that complete responsibility for the accident was the railroad's, consequently no possible suspicion of a jury compromise on liability, appellant asserts that his verdict was so grossly inadequate that the district judge had no discretion but to grant his motion for a new trial.

◼ In our judgment the verdict was small but not to such a significant extent as to authorize us to substitute our judgment for that of the trial court. There was no abuse of discretion here. Burkey v. Montour Railroad Co., 3 Cir., 1955, 220 F.2d 743.

The principal point urged on behalf of appellant is that his claim was seriously prejudiced by the defense bringing before the jury testimony of plaintiff having been given a pension from the Erie. The first query of plaintiff on cross-examination was "You are on a pension now, are you?" It was objected to but was answered "Yes". Defense counsel in support of the question said "I think it is proper. Counsel has brought out the fact that—". The court, interrupting, thought it was proper for the jurors to know that plaintiff had been retired in October of 1953 under the Railroad Retirement Act.[1] Regarding this the court said: "It is a plan applicable to railroad employees * * *. There is a common fund which is provided, as I understand it—jointly contributed to by the employer and the employee during the years of service." The court, however, went on to uphold the plaintiff's contention that retirement under the Railroad Act was not in mitigation of damages and so advised the jury. The defense attorney never did complete his statement as to what he claimed had been brought out in the direct examination of the plaintiff to justify his question. The record shows that on direct examination plaintiff had testified that in October of 1953 he had been sent out to Cleveland by his employer to be examined by its doctors. He was so examined, pronounced totally disabled, disqualified from working, was retired and since that date has not received any pay from the railroad.

Five doctors were called on behalf of the defense. The last two were psychiatrists who had examined plaintiff at the request of counsel for the railroad. They had examined plaintiff together on January 21, 1955. The first of these gave the medical history he had obtained from plaintiff of the latter's condition before the accident, what plaintiff had told him of the accident, the details of his own examination and his conclusions. The second of the psychiatrists was the last defense witness. He is the clinical director of a New Jersey state nervous and mental hospital and had specialized in psychiatry and neurology for thirty-eight years. He said he had received a history of the occurrence from plaintiff. He was asked "Would you tell me what the history of the incident was that you received from Mr. Sinovich?" Replying to this, the doctor went into great detail as to plaintiff's leg injury and Parkinson's disease. He included dates, results of X-rays, blood and urine tests and other data which apparently came originally from the hospital records. While it is not specifically so stated, plainly the witness was reading from his written report. After giving what amounts to almost a printed record page of notes regarding plaintiff's condition the doctor said the plaintiff told him that he "[w]as out of work until September of '52 when he returned and did the same kind of work and retired in Oc-

[1]. 45 U.S.C.A. § 228a et seq.

tober '53 and *was now receiving a pension from the Erie Railroad."* (Emphasis supplied.) The only further reference to this was during cross-examination of the doctor.[2]

■ Appellee's argument that the pension question on cross-examination was proper in view of what had transpired on direct is not borne out by the record as above noted. Plaintiff's statement that the railroad doctors had examined him in October, 1953, had found him totally disabled and disqualified from working, that he had been retired and had not received any pay since that date from the railroad was never denied by the defense. His inability to work was an important part of his claim. The fact that since his retirement Sinovich has been receiving compensation under the Railroad Retirement Act admittedly does not mitigate in any degree his damages and the trial court so determined. "The Railroad Retirement Act is substantially a Social Security Act for employees of common carriers. * * * The benefits received under such a system of social legislation * * * cannot be considered in mitigation of the damages caused by the employer." New York, N. H. & H. R. Co. v. Leary, 1 Cir., 1953, 204 F.2d 461, 468; Hetrick v. Reading Co., D.C.D.N.J.1941, 39 F.Supp. 22, 25. It is therefore difficult to understand the purpose of the query unless it was to convey to the jury that plaintiff

had in fact been pensioned off by the railroad for disability even though his major trouble was in nowise attributable to the accident.

Appellee endeavors to dispose of the doctor's evidence that plaintiff told him he was now receiving a pension from the Erie Railroad on the grounds that no objection or other complaint was made by the plaintiff to "this recital of history" and that it came after the court had told the jury plaintiff's retirement benefits were not to be considered in mitigation of damages. Actually the questioned statement of the doctor came in the middle of a long answer he was giving to a request from the defense attorney that he "[t]ell me what the history of this incident was that you received from Mr. Sinovich?" It was embedded in a narration of the accident and of plaintiff's condition obtained partly from Sinovich and partly from what could only have been the hospital records. The other psychiatrist had just testified about the identical medical history given by Sinovich and had made no allusion to an admission by him of having been allowed an Erie pension. There was not the slightest warning that under the guise of the same medical history a statement by plaintiff that he was receiving a pension from the Erie would be interpolated.[3] This is particularly true because the trial had long since become simply a matter of the amount of

---

**2.** "Q. Now you made a statement that this man told you he was receiving a pension from the Erie Railroad? A. Yes, he told me that.

"Q. Well, as a matter of fact if I told you that he was not receiving a pension from the Erie Railroad, would you believe me? A. I would also believe you, Mr. Madden.

"Mr. Madden: That is all.

"The Court: I think obviously he is receiving a pension under the law.

"Mr. Madden: It is not obvious at all. He gets railroad retirement. It has nothing to do with this case.

"The Court: Even recipients of pensions sometimes are under a misapprehension as to how it arises and I thought we cleared it up when we started, the

Railroad Retirement Act. The man may have still said that to Dr. Collins.

"The Witness: Yes, he told me—

"Mr. Blake (defense attorney): I should like to offer in evidence now on behalf of the defendant the records brought here this morning from the dental clinic of the St. Francis Hospital dated September 14, 1950 and May 16, 1953. They were already consented to I believe an hour ago."

**3.** No point is made on behalf of appellant that he did not make the misstatement of his retirement benefits to the doctor. In his condition he probably did. Certainly on the witness stand he readily accepted the same assumption in the question put to him on cross-examination.

compensation to be allowed by the jury and during the evidence of the plaintiff, who had been his own first witness, the court had expressly eliminated his Railroad Act retirement pay from the mitigation of damages defense. From all the trial circumstances it is impossible to conceive that the second defense psychiatrist, seemingly a very experienced witness, was on the stand without a copy of a report of his examination of plaintiff, of the hospital records and of his own conclusions and that the defense attorney was not familiar with this. Nevertheless he was permitted to inject the forbidden prejudicial material once more into the trial. It had originally appeared over plaintiff's objection. It had no rightful place in the issue and there was no legitimate excuse for dragging it in. It was harmful of itself and made much more so by its repetition as coming from the plaintiff. On that second occasion it was presented to the jury in connection with testimony by the same witness that Sinovich had told him his only injury had been to his leg and with the opinion of the witness that the severe Parkinson syndrome he had found had not been aggravated or accelerated by the accident.

We think that the whole situation resulted in bringing and keeping before the jury the harmful misstatement that the plaintiff was receiving a pension from the defendant. The effect of this though it cannot be measured precisely can be seen in the sum awarded. It is easy to say that plaintiff's attorneys should have moved for a mistrial but this accident had happened more than three years prior to the trial and plaintiff at about sixty-five years of age, from all the evidence is in the tight grip of a relentless progressive disease. The colloquy with the court during the cross-examination of the doctor which we have quoted in a footnote supra unfortunately did not eliminate the possible impression the jury may have gleaned about plaintiff's retirement pay. Plaintiff's attorneys perhaps should have requested the court to repeat what it had said to the

effect that the Railroad Retirement Act payments were not to be considered in computing plaintiff's losses but the jury had been so advised once. There is not the slightest indication that those attorneys were deliberately speculating on the outcome or doing other than their best for their client. Under all the circumstances it seems to us that the last moment reiteration by the defense of the barred evidence gravely and unwarrantably impaired the worth of plaintiff's claim to the jury. He is entitled to a new trial.

The judgment of the district court will be reversed and the cause remanded for a new trial on damages only.