OCEANIC STEAMSHIP COMPANY, Appellant,

v.

Hans RANDRUP, Appellee.

No. 16915.

United States Court of Appeals Ninth Circuit.

May 31, 1961.

As Modified on Denial of Rehearing Sept. 1, 1961.

Rehearing Denied Sept. 1, 1961.

J. Stewart Harrison, Charles E. Hanger, and Brobeck, Phleger & Harrison, San Francisco, Cal., for appellant.

Bruce Walkup, San Francisco, Cal., for appellee.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Appellant, owner of the SS Mariposa, has taken this appeal from a decree awarding appellee, as libelant, damages in the sum of $58,000.00 for injuries sustained due to the unseaworthiness of the Mariposa. Appellant contends that the district court's finding of unseaworthiness is not supported by the record and is clearly erroneous.

The injury occurred December 3, 1958, while the Mariposa was at sea en route from San Francisco to Honolulu. A cable or "fall" by which a lifeboat was suspended parted. Appellee, who had been working inside the lifeboat, was thrown overboard and sustained the injuries for which he here seeks compensation.

At the time, appellee, as carpenter's mate, was one of a crew of four engaged in greasing the lifeboat's falls and other moving parts of the apparatus by which the boat was raised and lowered.

The boat at both ends was suspended from a davit. The fall passed from the boat up to the davit and down along the davit arm to a power winch located on the deck. In being raised or lowered the boat at both ends traveled up and down on a track by means of a wheel. When the raising and lowering apparatus was not in operation a locking bar was placed across the davit track below the wheel. During the raising and lowering operation the locking bar was swung to one side to clear the davit track.

Upon trial the essential question presented by the known facts was as to what had caused the fall to part. Appellee, after establishing the facts of the accident, rested, having made out a prima facie case of defect in the fall. Appellant then undertook to prove that the fall had not been defective, but that it had parted by reason of the fact that an excessive strain had been placed upon it, caused by the presence of the locking bar on the davit track which had created a

positive stop which the davit wheel could not pass as it attempted under power to return back up the track.

The question remained: What had caused the presence of the locking bar on the davit track? The wheel just prior to the accident had successfully passed up and down the track several times during the course of the greasing operation.

Appellant's theory was that someone must have put the bar where it was and that its presence therefore did not demonstrate that the ship's gear was not reasonably safe for its intended purpose.

The district court rejected this theory as improbable. The crew members themselves were not within reach of the locking bar. It was the forward fall which had parted. Two crew members were at the after end of the boat; one was on the sports deck above; appellee himself was inside the boat. The only testimony relating to this theory was that of one of the crew members who testified:

"Q. Mr. Milosevich, did you put the locking bar on the forward end back up on the davit track at any time after Hans had gotten in the boat and started going up and down? A. I never touched it.

"Q. Did you see anybody touch it? A. I didn't see anybody around there, except Woody at the control, and myself. That is all I seen around there. I didn't see any passengers or anything around."

The alternative to this theory was that the locking bar had swung itself back to a point where its edge lay upon the davit track in the path of the wheel. Unless the bar prior to the accident had been bent or otherwise damaged, it could not have walked its way back onto the track. The force of gravity normally would have kept it in its position swung to the side of the track.

The court found that the bar must have swung itself back to the track; that it must therefore have been defective; that the defective condition of the bar had created a state of unseaworthiness which in turn had caused the accident.[1]

It is to this finding that appellant takes exception. It emphasizes that appellee's whole case in the district court was predicated upon a defective fall; that the presence of the locking bar on the davit track was the factual contention of appellant and had been disputed by appellee. We do not feel, however, that appellant's claim to its own evidence precludes appellee from disputing the inference to be drawn from it.

Appellant asserts that the record is devoid of evidence that the bar was de-

---

[1]. Actually, the court found in the alternative.

"VIII. The locking bar in question at No. 3 forward (as were all the locking bars on all the other lifeboats, 5 in number, as well as at No. 3 aft) was designed and constructed so that, when functioning properly, gravity will prevent it from swinging back onto and obstructing the davit track. A properly operating locking bar cannot get on the davit track unless someone lifts or places it there. The evidence in this case shows that no crew member working on or near No. 3 lifeboat touched the bar once it was disengaged and swung free of the davit track. The evidence further shows that no passenger was heard or observed in the area prior to the accident. The locking bar at the forward davit at No. 3 lifeboat in some manner unknown got onto the davit track by itself. The locking bar was so defective that it returned unaided onto the davit track. This was not a transitory condition. The presence of the locking bar on the davit track was due to a defect in the bar's functioning. This defect would have existed for a considerable period of time prior to the accident and placed an unusual strain on the fall.

"IX. Either the forward fall was unseaworthy in and of itself which caused it to part and give way, or the locking bar was defective and unseaworthy, and whether one condition or both was the fact here, the fall parted and rendered the vessel unseaworthy insofar as this equipment was concerned.

"Thus, regardless of whether the unseaworthy condition was in the falls or the locking bar, the libelant has sustained his burden of proof. If the defect was in the falls, libelant has made a prima facie case of unseaworthiness which respondent has not rebutted. If the locking bar was not functioning properly, there was a nontransitory unseaworthy condition."

fective. The record, it is true, is lacking in evidentiary proof, but this lack applies to both alternatives. We cannot say that the presence of a perverse and unseen hand, for no apparent reason interrupting this orderly operation to accomplish its destructive purpose, is so clearly a rational theory as to preclude its rejection by the district court. Following the accident, as appellant effectively established, the bar was certainly in a damaged condition. To what extent the damage had been caused by the events of the accident or had pre-existed them no one could say.

We conclude that the finding of the district court cannot be said to be clearly erroneous.

Appellant pleaded contributory negligence. It assigns as error the district court's failure to make any finding upon this issue. In our view there was no evidence to create an issue upon this point.

Appellant directs our attention to appellee's own testimony to the effect that he was in charge of the greasing operation; that it was an important part of his duties to see that the track was clear and that he could not say whether he had looked on this occasion.

This does not suffice. It is undisputed that the track had been clear and that the boat had been up and down the track several times in the course of the greasing operation. A constant watch was not required of appellee.

Appellant contends that the damage award was excessive. There was evidence that appellee had suffered a herniated intervertebral disc; that an operation reasonably could be expected in order to relieve pain in the leg and back and that success of surgery was difficult to prophesy; that if surgery should be undertaken it would probably be a year before appellee could be considered in condition to resume any kind of work; that appellee had suffered a brain concussion and damage to his right ear. There was testimony from which the court found that the injuries would preclude

appellee's return to sea duty and would require him to seek some more sedentary occupation. At fifty-two, appellee was untrained for anything but heavy physical labor. The court further found substantial elements of pain and suffering to be present.

Upon the record we conclude that the award of damages in the sum of $58,000.-00 was not clearly erroneous.

Affirmed.