**GYPSUM CARRIER, INC., Appellant,**

v.

**William D. HANDELSMAN, Appellee.**

**No. 17360.**

United States Court of Appeals
Ninth Circuit.

Aug. 1, 1962.

Rehearing Denied Sept. 20, 1962.

Graham, James & Rolph, and Francis L. Tetreault, San Francisco, Cal., for appellant.

Malcolm N. McCarthy, San Francisco, Cal., for appellee.

Before POPE, HAMLIN and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Appellee was chief steward aboard the appellant's S.S. Ocean Carrier. As the vessel was being prepared for sea, tackle which two members of the crew were attempting to secure for the voyage fell and struck appellee. Appellee filed two libels against appellant. The first sought maintenance and cure under the general maritime law. The second alleged a cause of action for unseaworthiness under the general maritime law and for negligence under the Jones Act,[1] and sought general and special damages. The libels were consolidated for trial before the court without a jury. Appellee was awarded $33,500.

We sustain the District Court's finding of liability. We conclude that no errors prejudicial to appellant were made in the computation of damages. The judgment is affirmed.

## I. LIABILITY

A. *Contributory Negligence.* Appellant concedes that there was evidence to support the District Court's finding that its crewmen handled the tackle negligently. Appellant contends that the District Court should have found appellee guilty of contributory negligence.

Appellant suggests that the facts were undisputed and that the District Court's holding that appellee was not negligent is therefore a conclusion of law which must be reviewed free of the protection of the "clearly erroneous" rule.[2]

1. 46 U.S.C.A. § 688.

2. See generally McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954).

We cannot agree. In some respects relevant to the issue of contributory negligence the evidence was unclear or conflicting as to precisely what appellee saw before the accident, where he was in relation to the tackle immediately before and at the moment of impact, and what he did. Appellant suggests that appellee knowingly placed himself in the path of the tackle and in consequence was struck as it fell. But to reach this conclusion one must reject the testimony of appellee, emphasize certain aspects of the deposition of one of two seamen who handled the gear, and draw inferences adverse to appellee from facts susceptible of contrary inferences.

Thus we need not consider whether a trial court's conclusion as to the existence of negligence is generally to be classified as one of fact or of law.[3] Clearly enough in the present case it reflected a factual determination from conflicting evidence. There is nothing to indicate, as appellant suggests, that the District Court tested appellee's conduct against an improper standard of care.

If the District Court had agreed with the appellant's resolution of the problems of proof, it also would have concluded that appellee was guilty of contributory negligence. The District Court did not interpret the evidence as appellant does, and neither do we. On an examination of the whole record, we cannot say that the District Court's determination that appellant failed to carry its burden of proving contributory negligence was clearly erroneous.[4]

B. *Unseaworthiness.* The District Court also found that appellee's injuries were caused by the unseaworthiness of the vessel. Appellant concedes the sufficiency of the evidence to support the finding of unseaworthiness, but contends that the finding of causation was clearly erroneous. Since appellant concedes its negligence, and since we sustain the District Court's finding that appellee was not contributorily negligent, we need not reach this alternative basis for liability.

C. *Injury.* Appellant challenges the District Court's finding that appellee sustained severe and permanent injuries as a result of the accident.

The falling tackle struck appellee's head, causing an abrasion. He made immediate outcry, sought treament from the second mate who was acting as ship's doctor, and during the remainder of the voyage requested and was given pain killers for severe headaches. When the voyage was completed, appellee sought medical care. He later suffered a blackout, and electroencephalogram (EEG) tests were performed. They revealed a brain lesion. There was testimony that the brain damage resulted from the accident, that it was the cause of appellee's headaches, dizziness, and blackouts, and that it would prevent appellee from returning to his employment as chief steward.

The accident and the brain injury are indisputable facts. The District Court's finding of a causal connection between the two rests principally upon (1) the appellee's testimony of headaches, dizziness, and blackouts beginning with the accident, (2) his denial of any prior head injury sufficient to account for the brain lesion, and (3) medical opinion of causal relationship based upon these elements considered in the light of the objective symptoms (particularly the abnormal EEG).

Appellant suggests that the objective medical data was not conclusive for a

3. Compare Pacific Tow Boat Co. v. States Marine Corp., 276 F.2d 745, 752 (9th Cir. 1960), and cases cited, with Verbeeck v. Black Diamond S. S. Corp., 269 F.2d 68, 70 (2d Cir. 1959), cert. denied 361 U.S. 934, 80 S.Ct. 374, 4 L.Ed.2d 355 (1960), and cases cited. See 35 Tulane L.Rev. 7, 50 (1960).

4. The Supreme Court has had recent occasion to apply in admiralty the rule that "the determination of the factual content of ambiguous testimony is for the trial court, and such determination can be set aside on review only if 'clearly erroneous.'" Maysonet Guzman v. Pichirilo, 369 U.S. 698, 702, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962).

variety of reasons, and that the District Court's finding of causal connection between the accident and the brain damage therefore depended upon acceptance of the testimony of the appellee. Appellant also points out that the District Court's finding that the appellee does in fact suffer from incapacitating headaches, dizziness, and blackouts necessarily rested largely upon appellee's testimony. Appellant then launches a vigorous attack upon appellee's credibility.

■■ Appellee was twice subjected to searching cross-examination in the trial court. During the trial appellant also attacked appellee's credibility on the basis of voluminous evidence regarding earlier illness and injury claims made by appellee. The District Court resolved the issue of credibility in favor of appellee. While this circumstance does not totally insulate the District Court's findings from review on appeal, it does, and should, condition that review. In admiralty appeals, as in civil appeals generally, "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." [5] In this Court appellant has rested its argument, as it must, upon a belief that after reviewing the record as a whole we "will be clearly and firmly convinced that libelant's accident of May 26, 1959, had no relation to his claim of serious and disabling injury \* \* \*." We have reviewed the record with care, keeping appellant's challenge to appellee's credibility particularly in mind. We are not left with the conviction which appellant suggests.

D. *Fraudulent Concealment.* When appellee applied to appellant for employment, he did not disclose his record of prior claims upon other shipowner-employers for illnesses and injuries. Appellant asserts that the undisclosed facts were material to the risk which it undertook in hiring appellee, that appellee knew this, and that his failure to disclose the facts was "fraud *ab initio* which barred him from recovery on this claim based on his employment." Appellee's right to recover either for negligence under the Jones Act [6] or for maintenance and cure under the general maritime law [7] depended upon his status as a seaman. Appellant's argument rests upon the premise that appellee's failure to disclose his "claims record" prevented him from acquiring that status.

To support its contention that recovery under the Jones Act was barred, appellant in its brief relied upon an analogy drawn from Minneapolis, St. Paul & Sault Ste. Marie Railway Company v. Rock, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766 (1929). In the Rock case, the Supreme Court held that a man who was refused employment by a carrier because of his physical condition and who subsequently obtained employment from the same carrier by applying under a false name and having a healthy friend take the physical examination in his stead was not entitled to bring suit as an "employee" of the carrier within the meaning of the Federal Employer's Liability Act.[8]

The Supreme Court based its decision in Rock upon the ground that a different

---

5. Fed.R.Civ.P. 52(a). See Oliver J. Olson & Co. v. Luckenbach S. S. Co., 279 F.2d 662, 668 (9th Cir.), cert. denied, 364 U.S. 881, 81 S.Ct. 171, 5 L.Ed.2d 103 (1960).

6. By its terms the Act applies to "Any seaman." 46 U.S.C.A. § 688. See Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952).

7. See O'Donnel v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 42, 63 S.Ct. 488, 87 L.Ed. 596 (1943); Weiss v. Central R. R. Co. of N. J., 235 F.2d 309 (2d Cir. 1956); Gilmore & Black, The Law of Admiralty 255 (1957).

8. 45 U.S.C.A. §§ 51–60.
 It was the explicit purpose of the Jones Act to make the provisions of the Federal Employers' Liability Act applicable to seamen. Congress intended to change prior law and make shipowners liable for injuries to seaman due to the negligence of the master or members of the crew. Compare Pacific S. S. Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220 (1928), with The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760 (1903). See Gilmore & Black, The Law of Admiralty 296–97 (1957); 2 Norris, The Law of Seamen §§ 647–48 (1952); Robinson, Admiralty 311–12 (1939).

result would frustrate the carrier's efforts to select physically fit employees in the interests of safety and the protection of commerce, and thus would be contrary to public policy. In their briefs in the present case, appellants argued that the favor status of seamen and the vulnerability of shipowners to exaggerated claims for injuries and illnesses required the same result.

Subsequent to the filing of appellant's briefs, the Supreme Court in Still v. Norfolk & Western Railway Co., 368 U.S. 35, 82 S.Ct. 148, 7 L.Ed.2d 103 (1961), reconsidered its decision in Rock. The Court noted that the Federal Employers' Liability Act reflected a policy that carriers should respond in damages for injuries inflicted upon their employees by the carriers' negligence, and held that this specific statutory policy was not to be eroded further by the general considerations relied upon in Rock. The Court held that "in all cases not involving the precise kind of fraud involved in Rock," the terms "employed" and "employee" as used in the Federal Employers' Liability Act must be "interpreted according to their ordinary meaning, and the status of employees who become such through other kinds of fraud, although possibly subject to termination through rescission of the contract of employment, must be recognized for purposes of suits under the Act." [9]

The "fraud" charged to appellee here is patently not of the kind present in Rock. Prior to Still, decisions applying Rock required "substantial proof of a direct causal connection between the misrepresentations made at the time of hiring and the subsequent injury to the employee, before any defense of fraud can be considered as a bar to a recovery." [10] In any event, under Still, even proof of a direct causal relationship will no longer suffice. [11] The Supreme Court plainly indicated in Still that attempts to draw an analogy between the factual situation presented in Rock and any other factual situation are unlikely to succeed; the facts of Rock, the Court said, "may never arise again." [12]

We conclude that the decision in Still compels a holding that a person like appellee who is a "seaman" and suffers injury in the course of his "employment" as a seaman, within the ordinary meaning of those words, is not barred from suit under the Jones Act because he conceals a material fact in applying for employment.

For reasons which will be referred to later, the judgment entered in this case can be sustained entirely upon the basis of appellee's cause of action under the Jones Act. It would be undesirable, however, to leave unresolved the question of fraudulent concealment which appellant has raised as applied to appellee's cause of action for maintenance and cure. That cause of action does not rest upon a legislative determination of public interest. Nonetheless, it is founded upon the most compelling considerations of public policy in favor of burdening both ship and shipowner with an obligation to provide medical care, living allowance, and wages for seamen who are injured or become ill while in the service of the vessel. [13] These considerations preclude the adoption of any general rule which would make fraud at the inception of the relationship determinative of the right to maintenance and cure by depriving one who subsequently serves the ship of his status as a seaman ab initio. "It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple," and we should be slow to recognize "ex-

9. 368 U.S. at 45, 82 S.Ct. at 154.

10. Eresafe v. New York, N. H. & H. R. R. Co., 250 F.2d 619, 621–622 (2d Cir. 1957). See also cases cited in Still, 368 U.S. at 42, n. 10, 82 S.Ct. 148.

11. 368 U.S. at 45–46, 82 S.Ct. 148.

12. 368 U.S. at 44, 82 S.Ct. 148.

13. See Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 528, 58 S.Ct. 651, 82 L.Ed. 993 (1938), quoted with approval in Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Gilmore & Black, supra note 8, at 253–54; 2 Norris, supra note 8, at § 543.

ceptions or conditions to stir contentions, cause delays, and invite litgations."[14]

As far as we have been able to determine, maintenance and cure has been denied only where the seaman has knowingly concealed the very illness or injury which later formed the basis for his claim.[15] And at most, fraud of that character would negate liability for the particular illness or injury; it would not, as appellant suggests, afford a basis for a general release of the shipowner's obligation. But we need not decide the precise limitations of this exception to the generally unqualified obligation to furnish maintenance and cure, for it is in any event inapplicable here.

█ E. *Exclusion of Evidence.* Appellant specifies the exclusion of certain evidence as error. The proffered evidence related to various aspects of appellee's prior record of claims for injury and illness. To the extent that it was offered in support of appellant's theory that appellee was barred from recovery by fraud, we have determined that defense to be insufficient as a matter of law, and the exclusion of evidence in support of it was therefore necessarily non-prejudicial. To the extent that the excluded evidence bore upon appellee's credibility, it was cumulative of a massive quantity of similar material which the District Court received. The trial court has wide discretion to limit cumulative proof. It was not exercised abusively in the present case.

█ F. *Cross-Libel.* Similarly, we find no error in the denial of appellant's motion for leave to file a cross-libel, tendered during the course of the trial.

Appellant concedes that the motion related to a matter peculiarly within the discretion of the trial court. It is not so clear to us as it is to appellant that the new issues sought to be introduced by the cross-libel would not have unduly complicated and delayed the disposition of the main litigation.

## II. DAMAGE

The appellant challenges the adequacy of the findings relating to damage.

As we have seen, appellee filed separate libels seeking (1) past and future maintenance and cure, and (2) general and special damages for negligence, including past and future loss of earnings and reasonable medical expenses, less such sums as appellee had already received from appellant for maintenance and cure. One set of findings and a single judgment were entered.

The Court found that appellee was entitled to maintenance "from the date his injury became disabling * * * and for a reasonable time thereafter, and for an indefinite period of time in the future, at the rate of $8 per day." The Court determined appellee's monthly earning capacity before injury, found that appellee was unable to work following his injury and would continue to be unable to work "for an indefinite period in the future." It further found that appellee had suffered and would continue to suffer pain and anguish. Following these preliminary findings, the Court found that appellee had been damaged in the sum of $33,500 "for past and future maintenance, and cure and for special and general damages." In the Court's conclusions of law and final decree, the award

14. Farrell v. United States, 336 U.S. 511, 516, 69 S.Ct. 707, 93 L.Ed. 850 (1949). See also Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 529–530, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Couts v. Erickson, 241 F.2d 499 (5th Cir. 1957).

15. "[E]xcept for injury and illness caused by the seaman's gross and willful misconduct or existing at the time the seaman signed on and knowingly concealed by him, the shipowner is liable for any injury which occurs or any illness which manifests itself while the seaman is under articles." Gilmore & Black, supra, note 8, at 254. The cases are collected in 2 Norris, supra note 8, at § 557. Among the cases permitting recovery see especially Couts v. Erickson, 241 F.2d 499 (5th Cir. 1957); Rosenquist v. Isthmian S. S. Co., 205 F.2d 486 (2d Cir. 1953); Lipscomb v. Groves, 187 F.2d 40, 45 (3d Cir. 1951); Ahmed v. United States, 177 F.2d 898 (2d Cir. 1949); Fish v. Richfield Oil Corp., 178 F.Supp. 750, 755–756 (S.D.Cal.1959).

was also stated in terms of a lump sum attributable to damages and maintenance and cure, past and future, without allocation to each element.

Appellant contends that the generalized nature of the findings and the lump sum form of the award make it impossible to ascertain how the trial court resolved two issues of law which were involved in the computation of damages. Appellant argues that the effect of this is to deprive appellant of its right to have this Court review the determination of these issues for prejudicial error. We agree with appellant that findings in admiralty (as in civil litigation generally when tried to the court sitting without a jury) should be sufficiently specific to permit fair appellate review of the manner in which the trial court resolved the issues upon which its judgment depends.[16] However, error in regard to the specificity of the findings, like other error, must be prejudicial to justify reversal.

We have concluded that the findings were inadequate. We have also concluded that in the circumstances of the present case the possible errors which appellant suggests could not have increased the amount of the judgment, and therefore that the insufficiency of the findings did not prejudice appellant.

A. *Future Maintenance and Cure.* The first of the two issues referred to by appellant concerns the computation of the award for maintenance and cure. As noted, the trial court's findings recite that the total award was based in part upon future maintenance and cure, and suggests that the amount may have been calculated "for an indefinite period of time in the future." In a case involving a recovery for maintenance and cure alone this would be error, for "the award of a lump sum in anticipation of the continuing need of maintenance and cure for * * * an indefinite period, is without support in judicial decision."[17] Future maintenance and cure can be awarded only in "such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained," at the time of the award.[18] Moreover, maintenance and cure cannot be awarded beyond the time when maximum possible cure has been effected, and the seaman's physical condition has become fixed beyond further improvement.[19]

The lump sum nature of the award in this case makes it impossible to determine whether the District Court exceeded these limitations upon future maintenance and cure. We turn to the question of whether this error, if it occurred, could have increased the amount of judgment.

Appellee had two causes of action, one for maintenance and cure under the general maritime law, and the other for negligence under the Jones Act.[20] The two rights were "independent * * *

16. See Daido Line v. Thomas P. Gonzalez Corp., 299 F.2d 669, 676–677 (9th Cir. 1962), and cases cited; Conte v. Flota Mercante Del Estado, 277 F.2d 664, 668 n. 2 (2d Cir. 1960); Dwyer v. Socony-Vacuum Oil Co., 276 F.2d 653, 654 (2d Cir. 1960). This Court's decision in Oceanic Steamship Co. v. Radrup, 292 F.2d 787 (9th Cir. 1961), is not to the contrary. There the award was objected to as excessive, not as based upon an erroneous rule of law, and the findings were at least sufficiently specific to reflect the elements considered by the trial court in arriving at the total damages.

17. Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 530, 58 S.Ct. 651, 82 L.Ed. 993 (1938).

18. 303 U.S. at 531–532, 58 S.Ct. at 655, quoted and applied in Salem v. United States Lines Co., 82 S.Ct. 1119, 1124 (1962).

19. See Farrell v. United States, 336 U.S. 511, 517–518, 69 S.Ct. 707, 93 L.Ed. 850 (1949); Peterson v. United States, 224 F.2d 748, 751 (9th Cir. 1955); Luksich v. Misetich, 140 F.2d 812, 814 (9th Cir.), cert. denied 322 U.S. 761, 64 S.Ct. 1280, 88 L.Ed. 1589 (1944).

20. We do not consider appellee's cause of action for unseaworthiness.

consistent and cumulative."[21] The trial court found in appellee's favor on both, and that determination has been sustained here. Appellee was therefore entitled to an appropriate award on each cause of action as long as this did not result in a double recovery for the same items of damage.[22]

■ An award for maintenance and cure may include wages to the end of the voyage, a living allowance equal to the value of board and lodgings aboard ship, and medical expenses, both of the latter to continue until the seaman has achieved maximum cure.[23] While the Court below could not properly award costs of subsistence and medical care for the indefinite future on the cause of action for maintenance and cure, it is clear that the Court could properly include these same elements in the award for future damages to which appellee was entitled on his cause of action for negligence under the Jones Act.

■ It has been stated that all of the elements of maintenance and cure may be recovered as special damages in a negligence action.[24] Both the seaman's wages and the cash value of his living allowance are recoverable in a negligence action as lost earnings, and the costs of

cure are recoverable as medical expenses.[25] And unlike the recovery for maintenance and cure, recovery for these items in a negligence action is not confined to immediate and definitely ascertainable needs, nor, ultimately, to the period of maximum cure. Since complete "recovery can be had in the damage action, * * * it becomes a merely theoretical speculation whether the same recovery could also be had under a maintenance and cure count."[26]

■ It may not always be true, but in the present instance we are satisfied that there were no circumstances which could have made an erroneous lump sum award for maintenance and cure for the indefinite future greater than the recovery to which appellee was in any event entitled as general and special damages under the Jones Act. The error, if it occurred, was harmless.

B. *Disability Payments.* We turn to the second issue raised by appellant concerning the computation of damages; the asserted error in the treatment of disability unemployment benefits which appellee received under the terms of the Unemployment Compensation Disability Act of California.[27]

These benefits were predicated upon the injuries which were the basis of the

21. Pacific S. S. Co. v. Peterson, 278 U.S. 130, 138, 49 S.Ct. 75, 73 L.Ed. 220 (1928).

22. See Vickers v. Tumey, 290 F.2d 426, 435 (5th Cir. 1961); Bartholomew v. Universe Tankships, Inc., 279 F.2d 911, 913, 915 (2d Cir. 1960); Yates v. Dann, 223 F.2d 64, 67 (3d Cir. 1955); McCarthy v. American Eastern Corp., 175 F.2d 727, 729 (3d Cir. 1949), cert. denied 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561 (1950); Smith v. Lykes Bros.-Ripley S. S. Co., 105 F.2d 604, 606 (5th Cir.), cert. denied 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939).

23. See Gilmore & Black, The Law of Admiralty 267–268 (1957); 2 Norris, The Law of Seamen, § 545 (1952).

24. Krey v. United States, 123 F.2d 1008, 1010 (2d Cir. 1941); Smith v. Lykes Bros.-Ripley S.S. Co., 105 F.2d 604, 606 (5th Cir.), cert. denied 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939); Seely v. City of New York, 24 F.2d 412, 413

(2d Cir. 1928); John A. Roebling's Sons Co. of New York v. Erickson, 261 F. 986, 988 (2d Cir. 1919), cert. denied 252 U.S. 585, 40 S.Ct. 394, 64 L.Ed. 729 (1920). See also Runyan v. Great Lakes Dredge & Dock Co., 141 F.2d 396 (6th Cir. 1944); The City of Avalon, 156 F.2d 500, 501 (9th Cir. 1946).

25. See Bartholomew v. Universe Tankships, Inc., 279 F.2d 911, 916 (2d Cir. 1960); McCarthy v. American Eastern Corp., 175 F.2d 727, 729 (3d Cir. 149), cert. denied 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561 (1950); Muise v. Abbott, 160 F.2d 590 (1st Cir. 1947); Seely v. City of New York, 24 F.2d 412, 413 (2d Cir. 1928).

26. Gilmore & Black, supra note 23, at 265. This might not be true, of course, if the Jones Act recovery, unlike maintenance and cure, were to be diminished because of contributory negligence.

27. Cal. Unemp. Ins. Code §§ 2601–3270.

present suit, and were received during a period for which appellee also claimed maintenance and cure in this litigation. Appellant contends that these payments should be deducted from any award for maintenance and cure. Appellee suggests that since the payments were established by the evidence before the trial court they were "presumably considered by the court." But it is impossible to determine from the findings whether this is true, and, if it is, whether the Court decided that the payments were or were not to be deducted.

However, we have concluded that the payments were not in any event deductible from the award, and that appellant was therefore not prejudiced by the inadequacy of the findings.

■ As we have seen, the entire recovery in this case may be supported on the cause of action under the Jones Act alone. This cause of action sounds in tort; it requires proof of negligence.[28] It is a well established rule that a tortfeasor's liability is not reduced by funds or services received by the injured person from a source collateral to the tortfeasor. The tortfeasor should not be required to compensate twice for the same injury,[29] but he should not have the benefit of payments to the injured person which he did not make. The test is therefore whether the particular payments came from appellant. Clearly these did not. The California Disability Fund is supported primarily by employee contributions;[30] it does not provide for direct contributions by employers at all, and appellant made none.[31] The "collateral source" doctrine has been criticized as being at odds with the purpose of tort liability to make the plaintiff whole, and with the conception of tort damages as purely compensatory. But it has found support on many grounds.[32]

The question is not whether a windfall is to be conferred, but rather who shall receive the benefit of a windfall which already exists. As between the injured person and the tortfeasor, the former's claim is the better. This may permit a double recovery, but it does not impose a double burden. The tortfeasor bears only the single burden for his wrong. That burden is imposed by society, not only to make the plaintiff whole, but also to deter negligence and encourage due care.

Furthermore, damages for personal injury are usually not, and as a practical matter cannot be, fully compensatory. The additional recovery will rarely make the injured person truly more than whole.[33]

Collateral source funds are usually created through the prudence and foresight of persons other than the tortfeasor, frequently including the injured person himself. They are intended for the benefit

28. Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932).

29. See Brooks v. United States, 337 U.S. 49, 53–54, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); United States v. Price, 288 F.2d 448, 449 (4th Cir. 1961); United States v. Brooks, 176 F.2d 482, 484 (4th Cir. 1949).

30. Cal.Unemp.Ins.Code §§ 2901, 3004.

31. We do not mean to suggest that payments from a fund to an injured person would necessarily be deductible from damages whenever the tortfeasor had contributed to the fund. The result will depend upon the purpose and nature of the fund and of the payments. Payments from funds to which the tortfeasor had contributed were held to be payments from a collateral source in the following cases: United States v. Price, 288 F.2d 448, 450–451 (4th Cir. 1961); Sinovich v. Erie R. Co., 230 F.2d 658, 661 (3d Cir. 1956); New York, N. H. & H. R. R. Co. v. Leary, 204 F.2d 461, 467–468 (1st Cir.), cert. denied 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 370 (1953); Chicago Great Western Ry. Co. v. Peeler, 140 F.2d 865 (8th Cir. 1944); Overland Const. Co. v. Sydnor, 70 F.2d 338, 340 (6th Cir. 1934).

32. For a recent re-examination of the conflicting arguments see Schwartz, The Collateral-Source Rule, 41 Boston L.Rev. 348 (1961). See also 2 Harper & James, The Law of Torts, 1337–60 (1956). Recent cases are collected in 28 NACCA L.J. 425 (1961–1962).

33. Hudson v. Lazarus, 95 U.S.App.D.C. 16, 217 F.2d 344, 346 (1954).

of the injured person, and not for that of the person who injures him. That intention should be effectuated.

In the usual situation, a federal court is called upon to apply the collateral source rule as one of state law. However, federal courts, including this one,[34] have recognized the doctrine as well established and generally prevailing, and have repeatedly expressed their approval of it.[35] They have applied it as a rule of federal law when called upon to to so,[36] including, specifically, in suits resting upon the Federal Employers' Liability Act.[37] We accept the rule as applicable to the computation of damages in Jones Act litigation. We therefore hold that the appellee's Jones Act recovery was not subject to diminution by the State Unemployment Disability benefits.

No more is required to sustain the judgment. Nonetheless, the question of whether an award for maintenance and cure against a non-negligent shipowner would be subject to reduction by such disability payments should not be left unresolved.

Appellant plausibly argues that the character of maintenance and cure and its place in the system of seamen's remedies requires that the award otherwise due appellee for maintenance and cure be reduced to the extent that appellee received funds to sustain himself from another source. Substantial considerations support the argument.

A refusal to diminish an award of maintenance and cure by the amount of such funds cannot be supported by punitive considerations, since the shipowner's obligation to pay maintenance and cure is independent of fault.[38]

Maintenance and cure is based upon need. It is not awarded if the seaman has received food and lodgings, and medical care, without expense or liability to himself, and the allowance will be reduced *pro tanto* to the extent that this is so.[39]

The seaman is under a duty to minimize expenditures. He is required to accept treatment at Marine or Public Health Service hospitals if tendered, unless clearly inadequate.[40] Indeed, until

---

34. United States v. Harue Hayashi, 282 F. 2d 599, 603–604 (9th Cir. 1960); Siebrand v. Gossnell, 234 F.2d 81, 95 (9th Cir. 1956); Standard Oil Co. of California v. United States, 153 F.2d 958, 963 (9th Cir. 1946), aff'd 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947).

35. See, e. g., Grayson v. Williams, 256 F. 2d 61, 65–66 (10th Cir. 1958); Rayfield v. Lawrence, 253 F.2d 209, 213 (4th Cir. 1958); Hudson v. Lazarus, 95 U.S. App.D.C. 16, 217 F.2d 344, 346 (1954); Sainsbury v. Pennsylvania Greyhound Lines, 183 F.2d 548, 550, 21 A.L.R.2d 266 (4th Cir. 1950).

36. A. H. Bull S.S. Co. v. Ligon, 285 F.2d 936, 937 (5th Cir. 1960); Caudill v. Victory Carriers, Inc., 149 F.Supp. 11, 17, n. 2 (E.D.Va.1957); United States v. Shipowners & Merchants Tugboat Co., 103 F.Supp. 152 (N.D.Cal.1952), aff'd 205 F.2d 352 (9th Cir.), cert. denied 346 U.S. 829, 74 S.Ct. 51, 98 L.Ed. 353 (1953).

37. Sinovich v. Erie R. R. Co., 230 F.2d 658, 661 (3d Cir. 1956); New York N. H. & H. R. R. Co. v. Leary, 204 F.2d 461,

468 (1st Cir.), cert. denied 346 U.S. 856, 74 S.Ct. 74, 98 L.Ed. 370 (1953); Chicago Great Western Ry. v. Peeler, 140 F.2d 865, 868 (8th Cir. 1944).

38. See Aguilar v. Standard Oil Co., 318 U. S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).

39. See Johnson v. United States, 333 U.S. 46, 50, 68 S.Ct. 391, 92 L.Ed. 468 (1948), affirming United States v. Johnson, 160 F.2d 789, 798 (9th Cir. 1947); Marine Drilling, Inc. v. Landry, 302 F.2d 127 (5th Cir. 1962); Stankiewicz v. United Fruit S.S. Corp., 229 F.2d 580 (2d Cir. 1956); Williams v. United States, 228 F. 2d 129, 134 (4th Cir. 1955); cert. denied 351 U.S. 986, 76 S.Ct. 1054, 100 L. Ed. 1499 (1956); 2 Norris, The Law of Seamen, §§ 568–69 (1952).

40. See Kossick v. United Fruit Co., 365 U.S. 731, 737, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 531, 58 S.Ct. 651, 82 L. Ed. 993 (1938); 37 N.Y.U.L.Rev. 316, 317 (1961); Gilmore & Black, The Law of Admiralty, 266–267 (1957).

the Supreme Court recently held to the contrary, it was quite generally thought that maintenance and cure was to be reduced by the amount of the seaman's earnings during the period of recuperation, on the theory that the shipowner's duty was sufficiently contractual so that the seaman was required to mitigate damages.[41]

Finally, maintenance and cure is one of a number of private and public means directed to rescuing the injured seaman and making him whole. Ultimately, each involves a flow of wealth from society to the injured individual. It is desirable that all be viewed as parts of an integrated system and applied in a way which will avoid disproportionate recoveries to particular individuals, whether high or low.

But there are considerations which argue against the reduction of maintenance and cure by payments of the type involved in the present case.

Although maintenance and cure is not founded in tort, its purpose in part is to provide "inducement to masters and owners to protect the safety and health of seamen while in service," and further, to strengthen the maritime service "by inducing men to accept employment in an arduous and perilous service." [42] Neither purpose would be served by releasing the shipowner or reducing the seaman's maintenance and cure.

■■■ Maintenance and cure is *not* in essence contractual,[43] and technical rules of mitigation of damages are not appropriate guides in determining its scope. This is reflected in the Supreme Court's recent rejection of the notion that maintenance and cure was to be reduced by the seaman's earnings during convalescence.[44] The Court pointed out that the suggested result would conflict with broader considerations affecting the vitality and efficacy of the remedy itself. It would inevitably tempt the shipowner to withhold maintenance and cure "as a means of forcing sick seamen to go to work," in order to reduce the shipowner's obligation.

Similarly, if the shipowner's liability were reduced by State Unemployment Disability payments, an incentive would exist for delaying the payment of maintenance and cure to induce the seaman to look first to the State fund. This would be inconsistent with a basic purpose of maintenance and cure: to provide not eventual indemnity but immediate succor.[45]

Moreover, the State Act provides for a deliberate, though brief, hiatus between disability and payment.[46] And if the claim were contested this period might well be extended by the administrative proceedings provided by the State Act.[47]

An intermediate appellate court of the State has held that a seaman who had received maintenance and cure was nonetheless eligible for disability payments.[48] In the present state of California law a seaman who obtains his maintenance and cure before applying for disability payments will receive both. If it were now held that disability payments were deductible from maintenance and cure, the seaman's ultimate recovery would depend

41. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), reversing 291 F.2d 813 (4th Cir. 1961), and disapproving Wilson v. United States, 229 F.2d 277 (2d Cir. 1956), and Perez v. Suwanee S.S. Co., 239 F.2d 180 (2d Cir. 1956). But see Yates v. Dann, 223 F.2d 64, 67 (3d Cir. 1955).

42. Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528, 58 S.Ct. 651, 82 L.Ed. 993 (1938).

43. See Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932).

44. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

45. Cf. Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 529–530, 58 S.Ct. 651, 82 L. Ed. 993 (1938).

46. Cal.Unemp.Ins.Code § 2627(b).

47. Cal.Unemp.Ins.Code §§ 2707–2707.6.

48. Gilliam v. California Employment Stabilization Comm., 130 Cal.App.2d 102, 278 P.2d 528 (1st Dist.1955).

upon which remedy he pursued first. On the other hand, the State law may change. The Act contains provisions apparently intended to prevent double payments,[49] and the California decision referred to above has been criticized.[50] Thus the double benefit to which criticism is here directed is the product of a State rule which may well be transitory. It would be questionable policy to fashion the incidents of the ancient and uniform admiralty remedy of maintenance and cure to meet results produced by a possibly temporary rule prevailing in a particular state.

Finally, the nature of the payment involved here argues against permitting its use to reduce maintenance and cure. The payments were not gratuitous. They originated in a fund created largely by the contributions of the beneficiaries. For present purposes they seem indistinguishable from benefits which might be received from disability insurance privately procured by the injured individual.[51] No case has been cited to us suggesting that the shipowner could rely upon the receipt of such privately procured benefits in mitigation of his obligation to pay maintenance and cure, and appellant's counsel conceded on oral argument that he thought such a result unsupportable. The single federal case arguably relevant allowed maintenance and cure during a period when the seaman was receiving municipal relief.[52]

On balance, we conclude that our obligation to resolve doubts in favor of the seaman,[53] and the interests both of the parties and the public will best be served by denying the right to set-off payments from the California Disability Fund against maintenance and cure otherwise due.

Judgment affirmed.

49. Cal.Unemp.Ins.Code § 2628. See also Garcia v. Industrial Accident Comm., 41 Cal.2d 689, 692, 263 P.2d 8, 10 (1953).

50. Bradshaw v. California Employment Stabilization Comm., 46 Cal.2d 608, 613, 297 P.2d 970, 973 (1956) (concurring opinion).

51. But see Barrett v. California Unemployment Ins. Appeals Bd., 190 Cal.App. 2d 854, 860, 12 Cal.Rptr. 356, 360 (2d Dist.1961).

52. Evans v. Schneider Transp. Co., 250 F.2d 710 (2d Cir. 1957). See also Socony-Vacuum Oil Co. v. Aderhold, 150 Tex. 292, 240 S.W.2d 751, 755 (1951). As to whether the shipowner's obligation to pay maintenance and cure is reduced by a seaman's prior recovery from a third party tortfeasor, compare Jones v. Waterman S.S. Corp., 155 F.2d 992, 995–996 (3d Cir. 1946), and Gaynor v. United States, 90 F.Supp. 751, 752–753 (E.D.Pa.1950), with Muise v. Abbott, 160 F.2d 590 (1st Cir. 1947); United States v. The Manzanillo, 190 F.Supp. 229, 233 (D.Ore.1960); and Gomes v. Eastern Gas & Fuel Associates, 127 F.Supp. 435, 438 (D.Mass.1954).

53. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Norris, The Seaman as Ward of the Admiralty, 52 Mich.L.Rev. 479 (1954).