**BURLINGTON NORTHERN RAILROAD COMPANY, Plaintiff–Appellee,**

v.

**John T. STRONG, Defendant–Appellant.**

**No. 89–1671.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1989.

Decided July 20, 1990.

---

Susan D. Thurmer, St. Paul, Minn., for plaintiff-appellee.

Gary K. Wood, Morrisard & Rossi, Aurora, Colo., for defendant-appellant.

Before BAUER, Chief Judge, and RIPPLE, Circuit Judge, and WILL, Senior District Judge.[*]

RIPPLE, Circuit Judge.

John Strong sued his employer, Burlington Northern Railroad Company (Burlington), alleging personal injury tort damages.

---

[*] The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

A jury awarded Mr. Strong $73,000. Thereafter, Burlington moved to set off against the judgment money received by Mr. Strong from a disability insurance program funded by Burlington. The district court denied this motion. Burlington then brought a separate suit to recover the funds. Summary judgment in favor of Burlington for the entire amount of the disability funds was entered on November 30, 1988. Mr. Strong appeals from the district court's judgment in the second suit. For the following reasons, we affirm.

## I

## BACKGROUND

Mr. Strong was a member of the Brotherhood of Maintenance of Way Employees during his employment with Burlington. The union operated under a collective bargaining agreement that applied to all union employees the provisions of the Supplemental Sickness Benefit Agreement of 1973 (1973 Agreement). In turn, the 1973 Agreement provided that the Supplemental Sickness Benefits (SSB) received by employees would not duplicate recovery of lost wages from a disability case.[1]

Mr. Strong was injured in two separate accidents on September 12, 1983 and March 5, 1985 during his employment with Burlington. He brought suit against Burlington to recover for these injuries under the Federal Employers Liability Act (FELA),

45 U.S.C. §§ 51–60. Following a jury trial, Mr. Strong was awarded $73,000 in compensation for the 1983 injury; Burlington was found not liable for the 1985 injury.

After the trial, Burlington moved for a determination that the amount of the judgment ought to be reduced by $11,678.21, the amount paid to Mr. Strong in SSB benefits. The district court held that, "in the absence of a lien or judgment in its favor, [Burlington] is not entitled to withhold the sum of $11,678.21 for any Supplemental Sickness Benefit paid to [Mr. Strong]." *Strong v. Burlington N. R.R.*, No. 86–C–661–C, Order at 2 (W.D.Wis. Feb. 18, 1988). However, the district court suggested that Mr. Strong could not succeed in keeping the money if Burlington sued on the contract:

I note that plaintiff's recalcitrance in refusing to remit the $11,678.21 sum allegedly paid out as Supplemental Sickness Benefit payments may well have adverse consequences for plaintiff himself.... [I]t seems clear that defendant can sue on the contract to recover this amount of money from plaintiff, and that if it does so, plaintiff will be subject to additional and probably unnecessary costs for defending a new lawsuit.

*Id.* at 2–3.

Taking its cue from the district court, Burlington sued on the contract to recover the SSB payments. Mr. Strong argued

---

1. The text of the provision is as follows:

6. *Liability Cases.* In case of a disability for which the employee may have a right of recovery against either the employing railroad or a third party, or both, benefits will be paid under this Plan pending final resolution of the matter so that the employee will not be exclusively dependent upon his sickness benefits under the Railroad Unemployment Insurance Act. *However, the parties hereto do not intend that benefits under this Plan will duplicate, in whole or in part, any amount recovered for loss of wages from either the employing railroad or a third party, and they intend that benefits paid under this Plan will satisfy any right of recovery for railroad to the extent of the benefits so paid. Accordingly, benefits paid under this Plan will be offset against any right of recovery for loss of wages the employee may have against the employing railroad;* the employing railroad, or the insuring agent if one is involved, will be subrogated to any right of recovery for loss of wages the employee may have against any party other than the employing railroad; as a condition to paying any benefits under this Plan the employing railroad, or the insuring agent if one is involved, may require the employee to assign to it any such recovery or right thereto from any party other than the employing railroad to the extent that benefits are payable under this Plan; and on any recovery for loss of wages from any party other than the employing railroad, the employee will reimburse the employing railroad, or the insuring agent if one is involved, from such recovery for any benefits paid under this Plan. For purposes of this Paragraph, a recovery which does not specify the matters covered thereby shall be deemed to include a recovery for loss of wages to the extent of any actual wage loss due to the disability involved. R.2 Ex.F at 6 (emphasis supplied).

that the railroad's suit was barred by *res judicata* because such a claim should have been brought as a compulsory counterclaim to the previous FELA suit. However, the court decided that the railroad's claim was a permissive, not compulsory, counterclaim: "Burlington Northern's right to recoup the disability benefits does not arise out of the same occurrence (the accidents) that gave rise to Strong's lawsuit; it derives from the provisions of the Supplemental Sickness Benefit Agreement of May 12, 1973." *Burlington N. R.R. v. Strong*, No. 88–C–195–C, Order at 5 (W.D.Wis. Nov. 30, 1988). The court further decided that, even if the claim could be said to be related to the same occurrence, an exception for claims that had not matured at the time of filing the answer would apply. *Id.* (citing 3 J. Moore's Federal Practice ¶ 13.14[1] (2d ed. 1988); 6 C. Wright & A. Miller, Federal Practice & Procedure § 1411, at 54–56 (1st ed. 1971)).

Mr. Strong's second argument before the district court was that the FELA prohibited the railroad from setting off its liability to its employees. Alternatively, Mr. Strong argued that the express language of 45 U.S.C. § 55 required that only the premium payments made by the railroad to the insurance program, and not the actual amount received by Mr. Strong, be credited to the railroad as payments already made. The district court rejected both arguments and granted Burlington's motion for summary judgment.

## II

## ANALYSIS

In this court, Mr. Strong renews the arguments he submitted to the district court. We shall address each separately.

### A. *Compulsory Counterclaim*

#### 1. General principles

Mr. Strong argues that Burlington's claim for setoff was a compulsory counterclaim that was waived when Burlington failed to raise it during the first trial (Mr. Strong's FELA trial). *See* Fed.R.Civ.P. 13(a).[2] Rule 13(a) is "in some ways a harsh rule":[3] if a counterclaim is compulsory and the party does not bring it in the original lawsuit, that claim is thereafter barred. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *see Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 572 (7th Cir.1989). But the rule serves a valuable role in the litigation process, especially in conserving judicial resources. As we have noted, Rule 13(a) "is the result of a balancing between competing interests. The convenience of the party with a compulsory counterclaim is sacrificed in the interest of judicial economy." *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1082 (7th Cir.), *cert. denied*, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979); *see also Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 594 n. 7 (7th Cir.1986) (noting that Rule 13(a) "encourages the simultaneous and final resolution of all claims which arise from a common factual background"); *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir.1977) ("The purpose of the rule is to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."); 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1409, at 46–47 (2d ed. 1990).

In order to be a compulsory counterclaim, Rule 13(a) requires that the claim (1) exist at the time of pleading, (2) arise out of the same transaction or occurrence as the opposing party's claim, and (3) not require for adjudication parties over whom

---

**2.** The pertinent portion of Federal Rule of Civil Procedure 13(a) is as follows:

(a) **Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim

and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

**3.** *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1082 (7th Cir.), *cert. denied*, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979).

the court may not acquire jurisdiction. There is no dispute that the third element—no required third parties—is met in this case. Our disposition therefore must turn on whether the other two requirements are met. We shall discuss them in the same order as the district court: 1) the same transaction and 2) the existence at the time of pleading requirements.

#### a. the same transaction test

■ This court has developed a "logical relationship" test to determine whether the "transaction or occurrence" is the same for purposes of Rule 13(a).

> "Courts generally have agreed that the words 'transaction or occurrence' should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a).... As a word of flexible meaning, 'transaction' may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*. ... [A] counterclaim that has its roots in a separate transaction or occurrence is permissive and is governed by Rule 13(b)."

*Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 396 (7th Cir.1986) (quoting *Warshawsky & Co.*, 552 F.2d at 1261) (emphasis supplied by this court); *see also Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1291 (7th Cir.1980), *rev'd on other grounds*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).[4] Despite this liberal construction, we have stressed that our inquiry cannot be a " ' "wooden application of the common transaction label." ' " *Gilldorn Sav. Ass'n*, 804 F.2d at 397 (quoting *Valencia*, 617 F.2d at 1291) (quoting *Ball v. Connecticut Bank & Trust Co.*, 404 F.Supp. 1, 4 (D.Conn.1975)). Rather, we must examine carefully the factual allegations underlying each claim to determine if the logical relationship test is met. For example, in *Gilldorn Savings Association*, this court decided that, even in light of this liberal construction, the transactions in that case were not sufficiently close to require that the second suit be barred as a compulsory counterclaim. *Id.* In that case, the first suit related to the 1983 sale of a mortgage company by Commerce to Gilldorn. The second suit related to a 1984 agreement that Commerce exchange a five million dollar subordinated debenture for five million dollars in Gilldorn preferred stock. Commerce alleged that it exchanged its debenture solely on the promise by Gilldorn that Gilldorn would not sue Commerce on a claim associated with the 1983 sale. *Id.* at 396. This court decided that the 1984 stock exchange was "totally unrelated" to the 1983 stock purchase, *id.*, despite acknowledging that "Commerce's claims technically are related to Gilldorn's in the sense that Commerce's claims may not have accrued until Gilldorn filed the Illinois action." *Id.* at 397. We concluded that the relationship was insufficient to satisfy Rule 13(a) because the two claims were based on different theories and would raise different legal and factual issues. *Id.* Similarly, in *Valencia*, we determined that a counterclaim for the debt due under the contract in a Truth and Lending Act suit was not compulsory and thus did not establish ancillary jurisdiction. The court concluded that the connection between the claims was "so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any, of the advantages envisioned in Rule 13(a)." 617 F.2d at 1291.

In short, there is no formalistic test to determine whether suits are logically related. A court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual back-

---

**4.** Other courts have also adopted the "logical relationship" test in applying Rule 13(a). *See, e.g. Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 29 (2d Cir.1990); *Savarese v. Agriss*, 883 F.2d 1194, 1208 (3d Cir.1989); *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir.1985); *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir.1980); *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir.1978).

grounds.[5]

### b. existence at the time of pleading

■ Even when a counterclaim meets the "same transaction" test, a party need not assert it as a compulsory counterclaim if it has not matured when the party serves his answer. This maturity exception "is derived from the language in the rule limiting its application to claims the pleader has 'at the time of serving the pleading.'" 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1411, at 81 (2d ed. 1990). "This exception to the compulsory counterclaim requirement necessarily encompasses a claim that depends upon the outcome of some other lawsuit and thus does not come into existence until the action upon which it is based has terminated." *Id.* at 82.

### 2. Application to this case

■ We believe, in light of the foregoing principles, that the district court correctly concluded that Burlington's claim was not a compulsory counterclaim. We agree with the district court that the claims do not arise out of the same transaction. Burlington's right to recoup does not arise out of the same occurrence that gave rise to Mr. Strong's earlier suit. His suit is grounded in the accidents that resulted in his injury. By contrast, Burlington's suit is grounded in the provisions of the Supplemental Sickness Benefit Agreement of May 12, 1973. The two claims "raise different legal and factual issues governed by different bodies of law." *Valencia,* 617 F.2d at 1291. "Judicial economy would not be well served in this case as these two actions are based on separate transactions...." *Gilldorn Sav. Ass'n,* 804 F.2d at 397. They "lack any shared realm of genuine dispute." *Valen-*

*cia,* 617 F.2d at 1291 (quoting *Ball,* 404 F.Supp. at 4).

■ We also agree with the district court that, even if we were to assume, *arguendo,* that these claims involve the same transaction, Burlington's claim need not have been brought as a counterclaim. It did not exist until the conclusion of the first suit when Mr. Strong obtained his judgment. Thus, the so-called "maturity exception" would permit the maintenance of this second suit. Accordingly, the district court properly determined that the railroad's claim is a permissive counterclaim that was not waived by Burlington's failure to plead it in the FELA case.

### B. *Right to Set Off*

Mr. Strong next argues that Burlington had no right to set off the SSB payments. Mr. Strong's position has two-prongs: either the setoff impermissibly exempts Burlington from FELA liability, or, if Burlington can set off, the amount should be limited to the premiums actually paid into the fund by Burlington. The FELA provision that governs this issue is 45 U.S.C. § 55:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter [FELA], shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

---

**5.** *See Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390, 397 (7th Cir.1986) (claims alleged different legal theories and related to "separate and distinct contractual arrangements and verbal assurances"); *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1291 (7th Cir.1980) (in determining whether logical relationship existed, court noted that claims raised different legal and factual issues), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783

(1981); *see also Savarese v. Agriss,* 883 F.2d 1194, 1208 (3d Cir.1989) (claim is logically related if separate trials would require substantial duplication of efforts; court rejected Rule 13 argument because elements of the two claims were distinct); *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978) (examined whether claims involved same legal and factual issues to determine if logically related).

As the Supreme Court has noted, this statute is designed to prevent common carriers from adopting a regulation or entering into a contract to limit their FELA liability. *Atchison, Topeka & Santa Fe Ry. v. Buell,* 480 U.S. 557, 561, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987).

■ Mr. Strong first asserts that the SSB payments were intended as a fringe benefit to the employees and therefore are not available to indemnify Burlington. The governing principle is clear:

> [F]ringe benefit programs, such as medical and hospital insurance and retirement pensions that are offered as partial consideration for employment, cannot be set off against an FELA judgment. But where ... the employer clearly intends to make a voluntary disability plan supplemental to sums recovered under the FELA, setoff is appropriate.

*Clark v. Burlington N., Inc.,* 726 F.2d 448, 451 (8th Cir.1984).[6] To distinguish a benefit intended to indemnify the employer from a fringe benefit, a court must "look to ' "the purpose and nature of the fund and of the payments" and not merely at their source.' " *Folkestad v. Burlington N., Inc.,* 813 F.2d 1377, 1381 (9th Cir.1987) (citation omitted) (quoting *Russo v. Matson Navigation Co.,* 486 F.2d 1018, 1020 (9th Cir.1973) (quoting *Gypsum Carrier, Inc. v. Handelsman,* 307 F.2d 525, 534 n.31 (9th Cir.1962)). Guidance on making this determination may be found in the specific provisions of the benefits plan in issue. *See Clark,* 726 F.2d at 451.

Two circuits already have confronted an argument similar to Mr. Strong's, and both have rejected it. In *Folkestad,* the plaintiff was injured in a railroad accident, sued

Burlington (his employer), and won a jury verdict of $490,000. Burlington requested a setoff of $57,000, representing payments to the plaintiff from the railroad's health and welfare plan. That plan, similar to the plan in this case, contained a clause stating that payments "will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits so provided." 813 F.2d at 1379. The district court refused the setoff; the Ninth Circuit reversed. The court first explained that the reason for enactment of 45 U.S.C. § 55 was to prevent railroads from exempting themselves from liability for railroad accidents. *Id.* In addition, the statute embodied the collateral source rule, in that the railroads would not be permitted to discount a tort judgment by payments made from independent insurance. *Id.* at 1380–81. Neither of these policies were offended by allowing setoff, concluded the court, because the expressed purpose of the insurance coverage in the collective bargaining agreement was to indemnify the employer against FELA liability. *Id.* at 1383.[7] The same basic rationale was followed by the Eighth Circuit in *Clark.* The court noted that Congress enacted section 55 to prevent railroads from escaping liability. But when the employer procures insurance to protect itself from FELA liability, the situation is quite different. "Section 55 allows employers to set off money paid to an injured employee because of his or her injury as long as the employer is not seeking to totally avoid liability." 726 F.2d at 451. Because the employer intended the disability payments to supplement FELA payments, the court concluded that setoff was appropriate. *Id.*

---

6. Several other courts have reached this same conclusion. *See, e.g. Folkestad v. Burlington N., Inc.,* 813 F.2d 1377, 1381–83 (9th Cir.1987); *Perry v. Metro–North Commuter R.R.,* 716 F.Supp. 61, 63–64 (D.Conn.1989); *Brady v. National R.R. Passenger Corp.,* 714 F.Supp. 601, 602–04 (D.Conn.1989); *Lyons v. Southern Pac. Transp. Co.,* 684 F.Supp. 909, 911 (W.D. La.1988); *Brice v. National R.R. Passenger Corp.,* 664 F.Supp. 220, 223–24 (D.Md.1987).

7. The *Folkestad* court was most persuaded by Judge Friendly's concurrence in *Blake v. Delaware and Hudson Ry. Co.,* 484 F.2d 204 (2d

Cir.1973). In allowing the plaintiff to recover for hospital bills that the railroad paid, Judge Friendly explained that he was constrained by the language of section 55. "Under 45 U.S.C. § 55 the railroad is entitled to set off only the premiums, not what the premiums bought." *Id.* at 207. Nevertheless, Judge Friendly suggested that the unions and the railroads could agree to a different result. "If the railroads wish to avoid the harsh result reached by the district court, they can accomplish this by specific provision in the collective bargaining agreement." *Id.*

We agree with our colleagues in the Eighth and Ninth Circuits that section 55 is not violated by an indemnity program agreed to between the union and the employer that allows the employer to deduct certain amounts from a FELA award. Section 55 was designed to prevent employers from receiving a windfall but not, as the Eighth Circuit points out, to "deter them from voluntarily paying monthly disability payments in lieu of wages to disabled workers." *Clark*, 726 F.2d at 451. The intent of the agreement in this case is clear. Benefits received under the SSB program were not intended to "duplicate, in whole or in part, any amount recovered for loss of wages from ... the employing railroad." R.1 Ex.C at 6 (SSB Agreement). The plan further provides that any SSB amounts received "will be offset against any right of recovery for loss of wages the employee may have against the employing railroad." *Id.* Burlington paid the entire amount necessary to fund the SSB program. Mr. Strong can point to only one passing reference in one letter that called the SSB program a "wage equivalent." R.1 Ex.D at 2 (letter from the National Railway Labor Conference dated October 7, 1971). We conclude, however, that the language of the agreement controls, and that the parties intended the SSB payments to be deducted from a FELA recovery.

■ We turn now to Mr. Strong's alternative position. He asserts that, if Burlington is entitled to a setoff, there must be further fact finding to determine the amount of premiums paid by Burlington into the plan and the setoff must be limited to that amount. This argument is based on the language in section 55 that allows an employer who is prohibited from setting off the amount paid by an insurance program to recover the amount actually paid in premiums.[8] But we have determined that, because of the terms of the agreements, Burlington *may* set off the SSB payments recovered by Mr. Strong, and thus this provision is inapplicable. Therefore, the district court was correct in not limiting the setoff to the premium pay-

ments made by Burlington. *Cf. Folkestad,* 813 F.2d at 1382 n. 5 (not limiting setoff to insurance premiums); *Clark,* 726 F.2d at 449–51 (reaching same result without discussion).

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.