**In re PULLMAN CONSTRUCTION INDUSTRIES, INC., et al., Debtors.**

**PULLMAN CONSTRUCTION INDUSTRIES, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America and Illinois Department of Revenue, Defendants.**

**Bankruptcy No. 87 B 06441–4. Adv. No. 92 A 15.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 17, 1992.

Steven B. Towbin, David A. Newby, Towbin & Zazove, Ltd., Chicago, Ill., for plaintiff.

Charles J. Cannon, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., James D. Newbold, Asst. Atty. Gen., Revenue Litigation Div., Joel Nathan, Asst. U.S. Atty., Chicago, Ill., for U.S. and Illinois Dept. of Revenue.

Larry Wolfson, Jenner & Block, Chicago, Ill., for the Goldwyns.

## MEMORANDUM OPINION ON MOTION OF UNITED STATES TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

Pullman Construction Industries, Inc. and its subsidiaries (collectively "Pullman") filed this Adversary Complaint to recover tax payments made to Defendants, United States of America and the Illinois Department of Revenue, which they allege are voidable under 11 U.S.C. § 547(b). The United States has moved to dismiss Count I of the Adversary Complaint, pursuant to Fed.R.Civ.P. 12(b)(2) (Fed.R.Bankr.P. 7012), for lack of *in personam* jurisdiction. It argues that the United States has not waived its sovereign immunity to permit this Court to grant the relief sought by Pullman against it. For reasons stated below, this motion is denied.

## ALLEGED FACTUAL BACKGROUND

For purposes of treating motions to dismiss, well pleaded allegations are presumed admitted.

Pullman paid its employees on a weekly basis and was required to pay federal withholding and FICA taxes to the United States Internal Revenue Service (the "IRS"), and to pay Illinois withholding taxes to the Illinois Department of Revenue ("Illinois"), shortly after each payroll date. Pullman alleges that, in the 90–day period prior to filing its Chapter 11 petition in bankruptcy, it failed to make all payroll tax payments as they became due. It therefore contends that payments which it did make to the IRS and Illinois were on account of overdue payroll taxes. Pullman further contends that not all of these payments were made on account of trust fund taxes. Thus, Pullman seeks to recover the non-trust fund portion of payments made to the IRS and Illinois during the 90–day pre-petition period pursuant to 11 U.S.C. § 547(b). Count I seeks recovery from the United States, and Count II seeks recovery from Illinois.

The parties agreed that the United States has filed claims in the related bankruptcy proceeding against Pullman. Those claims relate to both pre- and post-petition tax liabilities, and seek to collect unpaid withholding and FICA or unpaid Federal Unemployment Compensation taxes. In re-

sponse to Pullman's Adversary Complaint, the United States filed an Answer which *inter alia* asserts lack of jurisdiction due to sovereign immunity as an affirmative defense. Its motion to dismiss Count I of the Complaint rests on this ground.

Illinois has not asserted sovereign immunity and is not a respondent to this motion.

## SUBJECT MATTER JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred here under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## DISCUSSION

■ The United States enjoys sovereign immunity from suit unless it expressly waives such immunity and consents to be sued. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). Such waivers of immunity are not to be "liberally construed". *United States v. Nordic Village,* —— U.S. ——, ——, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (Feb. 25, 1992). To be effective, the government's consent to be sued must be "unequivocally expressed." *Id.; United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. at 1351.

Section 106 of the Bankruptcy Code provides for waiver of sovereign immunity of the United States under certain circumstances. In *United States v. Nordic Village,* —— U.S. ——, 112 S.Ct. 1011, the Supreme Court held that 11 U.S.C. § 106(c) does not unequivocally express a waiver of the government's immunity from action for monetary relief. —— U.S. at ——–——, 112 S.Ct. at 1014–15. Therefore, the only statutory provision which might contain such waiver pertinent to this case is 11 U.S.C. § 106(a) which provides that

A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

11 U.S.C. § 106(a). This section unequivocally expresses a waiver of sovereign immunity for claims arising out of the same transaction as the government's claim is based on. The statute thus provides waiver of sovereign immunity for compulsory counterclaims to governmental claims. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 29, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5815 ("the filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure"); *Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1015 ("subsections (a) and (b) of § 106 meet this 'unequivocal expression' requirement"); *In re 995 Fifth Avenue Associates, L.P.,* 963 F.2d 503, 22 B.C.D. 1420, 1422 (2nd Cir.1992) ("the plain meaning of [§ 106(a)] obviously reflects Congress's intent to provide a waiver of immunity where 'a governmental unit' filed a claim in the bankruptcy court").

Preference claims are property of the estate, 11 U.S.C. § 541(a); *see also In re Pullman Construction Industries, Inc,* 107 B.R. 909, 951 (Bankr.N.D.Ill.1989), and cases cited. The United States has filed claims against Pullman to collect unpaid taxes. The United States concedes that its sovereign immunity is waived in the event that Pullman's claim is a compulsory counterclaim. Thus, the only issue presented by this motion is whether Pullman's preference claim is a compulsory counterclaim to the government's claim filed for unpaid taxes.

### The Nature of Compulsory Counterclaims

■ Counterclaims are defined as compulsory by Rule 13(a), Fed.R.Civ.P. (Fed. R.Bankr.P. 7013), which requires that

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim

and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

A compulsory counterclaim must "(1) exist at the time of the pleading, (2) arise out of the same transaction or occurrence as the opposing party's claim, and (3) not require for adjudication parties over whom the court may not acquire jurisdiction." *Burlington Northern Railroad Co. v. Strong,* 907 F.2d 707, 710–11 (7th Cir.1990). A compulsory counterclaim is a claim that must be filed to preserve the defendant's rights. *Olympia Hotels Corp. v. Johnson Wax Development Corp.,* 908 F.2d 1363, 1367 (7th Cir.1990), citing *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974).

The Seventh Circuit has developed a "logical relationship" test to determine whether the claim and counterclaim arise out of the same transaction or occurrence. *See Burlington Northern,* 907 F.2d at 711 ("As a word of flexible meaning, 'transaction' may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship* . . . a counterclaim which has its roots in a separate transaction or occurrence is permissive"), quoting *Gilhorn Saving Assoc. v. Commerce Saving Assoc.,* 804 F.2d 390, 396 (7th Cir.1986). There is no rigid formula for determining whether claims are logically related, however "[courts] should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Burlington Northern,* 907 F.2d at 711–12.

*Application of Standards to This Case.*

Pullman's preference claim is a compulsory counterclaim to the government's claim under the standards recognized in the Seventh Circuit for Rule 13(a). First, the preference action existed at the time that the government's claims were filed, since the right to bring a preference action arises when the bankruptcy petition is filed. Also, the preference claim does not require additional parties over whom this Court has no jurisdiction. Finally, the two claims arise out of the same transaction in that both the United States' claims for unpaid taxes and Pullman's preference claim have their genesis in the same alleged omission—Pullman's failure to pay taxes.

The basis for both claims is the fact that taxes were owed but not fully paid in the pre-petition period, and the issues presented on the merits arise from the asserted consequences of this fact. The United States claims that Pullman is liable for the remainder of the unpaid taxes, while Pullman asserts that United States is liable for what it was paid because the tax payments constituted a preference. Also, the factual and legal issues in the claims of the United States are subsumed in Pullman's Adversary Complaint, because one of the elements of its action under § 547(b) is that Pullman owed a debt to the United States for unpaid taxes. *See* 11 U.S.C. § 547(b)(2) ("the trustee may avoid any transfer . . . for or on account of an antecedent debt owed by the debtor"). Therefore, the claims of Pullman and the Government are "logically related" when they both assert liability as a result of the same set of facts.

It is true that some other factual elements are involved in the preference claim that are not relevant to the tax claim. Those include questions as to whether the payments in issue were made within the 90–day preference period and whether any of the affirmative defenses listed in 11 U.S.C. § 547(c) apply to bar recovery of the alleged preference. However, the mere existence of some separate factual or legal issues does not destroy a counterclaim's status as compulsory. The test is not whether there is a total identity of fact issues, but whether the claims are "logically related". *See Warshawsky & Co. v. Arcata National Corp.,* 552 F.2d 1257, 1263 (7th Cir.1977) (specifically rejecting the "identity of issues" standard in favor of the "logical relationship" test). Accordingly, the instant Adversary Complaint meets the test under Rule 13(a) as a compulsory counterclaim to the IRS claims filed in the Pullman bankruptcy.

*Analysis of § 106(a).*

The foregoing analysis is supported by examination of the legislative history of 11 U.S.C. § 106(a). In its discussion of § 106(a), the Senate report accompanying the Bankruptcy Reform Act of 1978 stated that a "government unit cannot receive a distribution from the estate without subjecting itself to any liability it has to the estate within the confines of the compulsory counterclaim rule. Any other result would be one-sided." S.Rep. No. 989, 95th Cong., 2d Sess. 29, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5815. Certainly, other claimants may be made defendants to preference actions arising out of the same transaction as their claim. The language and legislative history of § 106(a) shows that it is intended to, and by its language does, put the government on par with other claimants concerning liability for counterclaims to its claims.

*Analysis of Authorities.*

This Court's conclusion that the claims in issue here are logically related under the compulsory counterclaim test is also supported by authorities considering this issue.

Two courts have considered whether a claim for unpaid taxes and a complaint to recover pre-petition tax payments under § 547(b) arise from the same transaction. In *In re Malmart Mortgage Company, Inc.,* 109 B.R. 1 (Bankr.D.Mass.1989), the debtor made two payments to the Internal Revenue Service on account of withholding taxes due from the fourth quarter of 1985 to the second quarter of 1986. In bankruptcy, the IRS filed a claim for unpaid withholding taxes due from the second quarter of 1986 to the third quarter of 1987. The debtor then asserted a preference claim to recover pre-petition tax payments. The court held that the government had waived its sovereign immunity because both claims arose out of same transaction, namely the debtor's failure to make timely tax payments. *Id.* at 3.

The same result was reached in *In re Maytag Sales and Service, Inc.,* 23 B.R. 384 (Bankr.N.D.Ga.1982). There, DeKalb County, Georgia had a judgment against debtor for unpaid taxes. The county garnished debtor's bank account during the preference period, and the debtor sued to recover the garnished funds under § 547(b). There was no detailed analysis, but the court found that the county's proof of claim (based on the judgment) and debtor's preference action (based on the garnishments) arose from the same transaction.

In a related context, the IRS in several cases has filed claims for unpaid taxes and then claimed sovereign immunity when sued under 11 U.S.C. § 362(h) for damages arising out of its effort to collect taxes in violation of the automatic stay. *See Taborski v. United States,* 141 B.R. 959, Bankr. L.Rep. (CCH) ¶ 74,519 (N.D.Ill.1992); *In re Solis,* 137 B.R. 121 (Bankr.S.D.N.Y.1992); *In re Bulson,* 117 B.R. 537 (9th Cir. BAP 1990); *In re Price,* 103 B.R. 989 (Bankr. N.D.Ill.1989), *aff'd,* 130 B.R. 259 (N.D.Ill. 1991); *In re Academy Answering Service, Inc.,* 100 B.R. 327 (N.D.Ohio 1989); and *In re Lile,* 96 B.R. 81 (Bankr.S.D.Tex.1989). Each decision but one concluded that the IRS's sovereign immunity was waived under § 106(a) because both claims arose out of the same transaction—namely, the debtor's failure to pay taxes. *Taborski,* 141 B.R. at 962, Bankr.L.Rep. at ¶ 74,519; *Solis,* 137 B.R. at 127; *Price,* 130 B.R. at 270; *Bulson,* 117 B.R. at 541; [1] and *Lile,* 96 B.R. at 85. Moreover, this reasoning has survived *Nordic Village. See Taborski,* 141 B.R. at 963–64, Bankr.L.Rep. at ¶ 74,519 (finding waiver under § 106(a) although, in light of *Nordic Village,* the government had not waived immunity under § 106(c)) of the foregoing cases. The only court to find that the two claims did not arise out of the same transaction was *Academy Answering Service,* 100 B.R. at 330, wherein the Court gave no detailed reasoning for that ruling.

---

**1.** *Bulson* has been overturned insofar as the IRS is now immune under § 106(c) from actions to recover monetary damages for violating the automatic stay. *In re Pearson,* 917 F.2d 1215 (9th Cir.1990). *See also In re Spencer,* 123 B.R. 858 (Bankr.N.D.Cal.1991). However, that is irrelevant to the present analysis.

In other cases of assertedly wrongful tax collection, some courts have disagreed.

In *In re Darling Hardware,* 64 B.R. 544 (Bankr.W.D.Mich.1985), debtors filed a complaint against the IRS, seeking damages arising out of the IRS pre-petition seizure of debtor's property. The IRS had filed a claim, but the court found that sovereign immunity was not waived under § 106(a) because the debtor's complaint did not arise out of the same transaction as the IRS claim.

However, in *United States v. Raytown Lawnmower Co.,* 763 F.Supp. 411 (W.D.Mo.1991), the United States brought suit to reduce assessments to judgment for taxes due. The defendant filed a counterclaim, alleging that IRS's collection efforts violated his statutory rights under 26 U.S.C. § 7433(a). The court ruled that this counterclaim was compulsory under Fed. R.Civ.P. 13(a), since defendant's tax liability gave rise to both the claim and counterclaim.

Other cases in which claims against the government were found to arise out of the same transaction as the government's claim include *In re 995 Fifth Avenue Associates, L.P.,* 963 F.2d 503, 22 B.C.D. 1420 (2d Cir.1992); *WJM, Inc. v. Massachusetts Dep't of Public Welfare,* 840 F.2d 996 (1st Cir.1988); *In re McLean Industries, Inc.,* 132 B.R. 247 (Bankr.S.D.N.Y.1991); and *In re Klingberg Schools,* 68 B.R. 173 (N.D.Ill. 1986), *aff'd,* 837 F.2d 763 (7th Cir.1988).

In *995 Fifth Avenue,* the debtor attempted to record a sale of real estate with the state of New York, and the state imposed a tax on the transfer. The state filed an administrative claim for the unpaid portion of that tax, and the debtor filed a complaint against the state seeking a refund on the paid portion under 11 U.S.C. § 1146(c). The Second Circuit held that the state's sovereign immunity was waived under § 106(a), and concluded that both claims arose from the same transaction since they both arose out of the sale of the real estate. 963 F.2d 503, 22 B.C.D. at 1423.

In *WJM, Inc.,* the Massachusetts Department of Public Welfare (the "Department") determined that it had overpaid the debtor, a nursing home operator, for past services. It consequently set off the amount owed against its monthly payments to the debtor. In bankruptcy, the Department filed a claim for alleged overpayments, and the debtor filed a preference claim to recover certain setoffs taken against its payments. The First Circuit found that the transaction from which these claims arose was the same "course of dealings between the [Department] and [the debtor] under the provider contracts." 840 F.2d at 1005.

The same facts were presented in *Klingberg Schools.* Illinois filed a claim to recover pre-payments for services on a contract which were allegedly never rendered. The debtor's claim sought payment from Illinois for services rendered under that same contract. The District Court found that Illinois waived immunity under § 106(a) because both claims arise out of the same contract. 68 B.R. at 177.[2] *See also In re McLean Industries, Inc.,* 132 B.R. 247 (Bankr.S.D.N.Y.1991) (sovereign immunity waived under § 106(a) because both government's claim and the debtor's claim arose out of government's contractual rights pursuant to security interest granted under a government program).

One principle can be derived from these cases: Preference claims which arise out of tax collections are logically related to claims filed to assert liability for those same taxes. Only *In re Rebel Coal Company, Inc.,* 944 F.2d 320 (6th Cir.1991), and *Academy Answering Service,* 100 B.R. 327, hold to the contrary.

*Academy Answering Service* contains no detailed analysis to back up its conclusion.

In *Rebel Coal,* the government obtained a judgment against the debtor for civil fines imposed under the Mine Safety and Health Act, 30 U.S.C. § 801 *et seq.,* and it garnished funds to satisfy the judgment during the preference period. In bankruptcy, the government filed a claim for unpaid civil fines, and the debtor filed a preference

---

**2.** The issue of sovereign immunity was not addressed in the Seventh Circuit opinion affirming the district court's order. See *In re Klingberg Schools,* 837 F.2d at 763.

claim to recover the garnished funds. The Sixth Circuit held that the government had not waived its immunity under § 106(a). That court reasoned that the claims were not sufficiently related to be considered compulsory counterclaims under Rule 13(a) because the relevant facts and legal issues in each claim were completely different and independent of each other. *Id.* at 322–23. The Court added, "the fact that a preference is a consequence of the assessed penalties fails to establish the relationship necessary to waive immunity." *Id.* at 323. [3]

The Court gives deference to the Sixth Circuit authority, but declines to follow *Rebel Coal* for several reasons. First, in this case the elements of proof largely overlap for both the tax and preference claims. Second, the Seventh Circuit has clearly stated that the term "transaction" is liberally construed for purposes of Rule 13(a) so long as the claim and counterclaim are logically related, and Pullman's preference action here is logically related to the government's claims for unpaid taxes because the two claims both arise out of Pullman's failure to pay its taxes. Finally, the result in *Rebel Coal* is inconsistent with the language of § 106(a) and the Congressional intent behind § 106(a), because granting the United States sovereign immunity would elevate it above other similarly situated claimants, and § 106(a) was enacted to avoid that result.

The United States cites *In re Greenstreet, Inc.*, 209 F.2d 660 (7th Cir.1954), and *In re Oxford Marketing, Ltd.*, 444 F.Supp. 399 (N.D.Ill.1978), to support its argument that the Pullman's Complaint is not a compulsory counterclaim to its claim. *Greenstreet* is cited for the proposition that the Seventh Circuit has not abandoned the requirement that counterclaims must arise out of the same transaction as the claim to be compulsory. However, *Greenstreet* was decided some time ago, and more re-

cently the Circuit Court found that "transaction" may include a series of logically related occurrences for the purposes of Rule 13(a). *Burlington Northern*, 907 F.2d at 711.

In *Oxford Marketing*, the United States filed a complaint for reclamation seeking to gain possession of property which it owned by virtue of a security interest. The trustee filed a counterclaim seeking damages based on assertion that the government wrongfully garnished the debtor's bank account. The court found that it lacked jurisdiction to hear this matter because the trustee's complaint was not a compulsory counterclaim. The court found "no logical relationship" between the two claims because the counterclaim did not challenge the security interest or any underlying agreement. 444 F.Supp. at 403. *Oxford Marketing* is clearly distinguishable since the government's claim in *Oxford* arose out of a security interest, and the trustee's claim arose out of the government's action to collect on the debt. Proof of each claim would have entailed entirely different evidence and legal theories.

This Court concurs with the reasoning of most of the other opinions considering this issue, and concludes that Pullman's preference claim is a compulsory counterclaim to claims filed by the United States, within the meaning of Fed.R.Civ.P. 13(a) and for purposes of 11 U.S.C. § 106(a).

## CONCLUSION

By separate order, the United States' motion to dismiss Pullman's Complaint is denied.

---

**3.** Pullman seeks to distinguish this case by arguing that the Sixth Circuit has a different standard for determining whether claims arise out of the same transaction. However, it may be argued with equal force that the Sixth Circuit effectively employs the same "logical relationship" test as the Seventh Circuit. *See Rebel*

*Coal*, 944 F.2d at 322; *Maddox v. Kentucky Finance Company, Inc.*, 736 F.2d 380, 382 (6th Cir.1984) (the Sixth Circuit employs a four-factor test to determine whether claims arise out of the same transaction, but the first question is whether the claims are logically related).