NO. 07-02-0279-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

FEBRUARY 27, 2004

_____

THE KANSAS CITY SOUTHERN RAILWAY COMPANY, APPELLANT

V.

HENRY NUSSBECK, APPELLEE

_____

FROM THE 58TH DISTRICT COURT OF JEFFERSON COUNTY;

NO. A-160267; HONORABLE JAMES W. MEHAFFY, JR., JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**OPINION**

Appellee Henry Nussbeck brought suit under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, against his employer, appellant The Kansas City Southern Railway Company (KCS), alleging on-the-job injuries. The suit was settled before trial, but during preparation of the settlement documents the parties disagreed over whether KCS was entitled to set off $8177.81 in benefits paid Nussbeck under a Supplemental Sickness

Benefits Plan. After a hearing on that issue, the trial court entered judgment in accordance with the settlement and denying KCS the setoff. The appeal thus presents the single issue whether the trial court erred in denying KCS its requested setoff. We will affirm the trial court.

The facts are not in dispute. Nussbeck was a carman foreman for KCS and a member of the American Railway and Airway Supervisor Association (ARASA). In 1997, ARASA negotiated a new compensation agreement for its members with KCS. Among other provisions, the agreement made the supervisors represented by ARASA eligible to participate in an existing benefit plan established by KCS and other railroads for their railroad shop craft employees under a 1979 agreement, the Supplemental Sickness Benefit Agreement. The benefit plan was implemented through an insurance policy issued by Provident Life and Accident Insurance Company, and was further described in a Supplemental Sickness Benefit Plan Document and a Plan Summary.

Under the 1979 agreement with craft employees, KCS and the other railroad employers paid the premiums for their employees' participation in the Supplemental Sickness Benefit Plan. The 1997 agreement between ARASA and KCS provided, though, that the supervisors would pay the premium for their participation in the plan through monthly payroll deduction.[1]

---

[1]The relevant language from the 1997 ARASA agreement with KCS reads as follows:

ARTICLE VI - PROVIDENT INSURANCE

Effective January 1, 1997, the Carrier [KCS] will place employees [ARASA

Applicable federal law, Section 5 of FELA, 45 U.S.C. § 55, renders void any contract by which a common carrier exempts itself from liability under the Act, but provides that, in any action brought against a carrier under the Act, the carrier may set off against amounts for which it may be liable sums the carrier has contributed or paid to insurance or similar benefits paid to the injured employee on account of the injury.

Citing cases in which employers were allowed setoff, under 45 U.S.C. § 55, of payments made to plaintiff-employees under benefit plans created by the employer, KCS contends that case law applying 45 U.S.C. § 55 to plans like the Supplemental Sickness Benefit Plan mandates the conclusion that it is entitled to set off Nussbeck's benefits against its FELA liability to him. Nussbeck responds that his payment of the premium cost for his coverage under the plan distinguishes this case from those cited by KCS and requires that the benefits be ignored in calculating his recovery against his employer, under the general rule applicable to compensation received from a collateral source. Nussbeck cites *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525 (9th Cir. 1962), a Jones Act case which treated a state-created unemployment disability fund, supported primarily by employee contributions and to which the employer had made no contribution, as a collateral source. *Id*. at 535.

_____

members] within the Provident Life and Accident Insurance Company Policy No. R-5000 Supplemental Sickness Benefit Plan for railroad shop craft employees (hereinafter "Provident") under the conditions specified hereinafter:

    (a)    Provident is an insurance policy and, as such, the stipulations therein are subject to change; therefore, employees covered by Provident are subject to the conditions set forth in its policy (and subsequent revision [sic] thereto).

    (b)    The monthly premium (cost per employee) will be paid by each employee through payroll deduction in the first period of each month.

There is a third category of cases, in which the courts have found that benefits funded with payments made by the employer were nonetheless to be treated as from independent, collateral sources, and thus not subject to setoff, because the court concluded that the benefits were part of the employee's compensation.[2] *See Hall v. Minnesota Transfer Ry. Co.*, 322 F.Supp. 92, 96 (D.Minn.1971); *Southern Pac. Transp. Co. v. Allen*, 525 S.W.2d 300, 306 (Tex.Civ.App.--Houston [14th Dist.] 1975, no writ).

As noted, the Supplemental Sickness Benefit Plan was established by the railroads pursuant to a collective bargaining agreement. The plan does not bear the earmarks of those 45 U.S.C. § 55 was designed to prohibit. *See Folkestad v. Burlington N., Inc.,* 813 F.2d 1377, 1379-80 (9th Cir. 1987) (noting the legislative history of 45 U.S.C. § 55 indicates it was enacted to bar devices used by railroads to exempt themselves from full liability for employee injuries). Further, although benefits are payable without regard to fault or the employer's liability,[3] the terms of the plan evidence the railroads' intent that benefits paid under the plan be credited against any obligation the employer owes under FELA with respect to the injury and not give rise to double liability.[4]  We conclude, though, that

---

[2]This "fringe benefit" argument can thus be seen simply as another way of stating that the benefit has been paid for by the employee. *Cf. Hall*, 322 F.Supp. at 96.

[3]*See Hall*, 322 F.Supp. at 96-97, distinguishing insurance coverage obtained by an employer and limited to injuries on the job for which the employer might be liable.

[4]The courts have construed 45 U.S.C. § 55 to recognize employers' legitimate interests in avoiding double liability for the same injury. *See Folkestad*, 813 F.2d at 1380; *Clark v. Burlington N., Inc.,* 726 F.2d 448, 451 (8th Cir. 1984). KCS does not directly argue that disallowance of setoff causes it double liability to Nussbeck.

Nussbeck's payment of premiums disentitles KCS to set off the benefits he received against its FELA liability to him, even under the cases cited by KCS.

KCS relies on *Clark v. Burlington N., Inc.,* 726 F.2d 448 (8th Cir. 1984); *Folkestad,* 813 F.2d 1377; and *Burlington N. R.R. Co. v. Strong,* 907 F.2d 707 (7th Cir. 1990). KCS urges that this appeal should be governed by the holdings of those cases that the source of premiums is not the determinative factor in deciding whether benefits should be regarded as emanating from the employer or from a collateral source, and that courts instead focus on the purpose and nature of the fund and the benefit payments.[5] Since the nature of this benefit plan is such as to permit setoff,[6] and the language of the plan expressly provides for setoff,[7] KCS contends, it is entitled to setoff. But the contention takes the holdings of those cases out of their contexts. Although, as noted, each opinion concludes that setoff of the benefits in question was appropriate, none of them reasonably

---

[5]*Clark*, 726 F.2d at 450-51; *Folkestad*, 813 F.2d at 1381; *Strong*, 907 F.2d at 713.

[6]Indeed, as KCS points out, *Strong* dealt with an earlier version of the same benefit plan involved here, but with respect to a claimant for whom his employer paid the premiums. 907 F.2d at 714.

[7]The Plan Summary contains the following language: "if benefits are paid under this Plan, the benefit payments will be deducted from any payment for loss of wages in any case in which the employer or a third party is liable for the injury."

Nussbeck contends that the plan language providing for setoff does not apply to supervisors because there is no language in KCS's 1997 collective bargaining agreement with ARASA comparable to language in the 1979 agreement. KCS points out that the Plan Summary is expressly made a part of the plan under the terms of the Plan Document, and the Summary restates the employer's right of setoff clearly. For purposes of this opinion, we accept KCS's position that the terms of the plan expressly made applicable to ARASA members include the provision for setoff of benefits against any liability of KCS for lost wages under FELA.

can be read to say that 45 U.S.C. § 55 permits an employer to set off benefits for which it has not paid.

The *Folkestad* court's discussion of the issue clearly is premised on the requirement that to be eligible for setoff, benefits must be paid for by the employer. There the court referred to *Gypsum Carrier*, in which, as noted, the same circuit held that benefits a seaman received from a state disability fund supported primarily by employee contributions[8] would not reduce his Jones Act recovery against his employer, and stated, "Thus if employee contributions pay for the insurance, benefits are regarded as collateral to the employer and setoff is prohibited." *Folkestad*, 813 F.2d at 1380.

The *Clark* opinion is similarly premised, stating:

> A problem arises in distinguishing a fringe benefit from a benefit meant to indemnify an employer against future liability. A benefit may be exempt from setoff under the collateral source rule even though the employer is the sole source of the fund. The important consideration is the character of the benefits received, rather than whether the source is actually independent of the employer.

726 F.2d at 450.

In *Strong*, the employee plaintiff was covered by a 1973 version of the Supplemental Sickness Benefit Agreement. The agreement contained language identical to that in the

---

[8]The court quoted from *Gypsum Carrier*: "The tortfeasor should not be required to compensate twice for the same injury, but he should not have the benefit of payments to the injured person which he did not make." *Folkestad*, 813 F.2d at 1380, quoting *Gypsum Carrier*, 307 F.2d at 534.

1979 agreement at issue here.[9] Strong argued that the benefit payments were intended as a fringe benefit of his employment and not subject to setoff. 907 F.2d at 713. The court noted that Burlington paid the entire cost of funding the benefit program and pointed to the plan language indicating the railroad's intent that payments made under the plan not duplicate amounts received for loss of wages from the employer. *Id.* at 714. The court relied on the *Clark* and *Folkestad* opinions in rejecting Strong's contention that setoff of the benefits would violate 45 U.S.C. § 55, and holding that setoff was appropriate. *Id*. at 713-14. The *Strong* opinion must be seen as founded on the fact Burlington paid for the coverage.

KCS refers also to the statement in the Fifth Circuit opinion in *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972), that the mere fact an employer has contributed to the fund from which an employee receives benefits does not necessarily mean that the fund is not a collateral source. KCS posits that the opposite must also be true, and that the mere contribution by employees to the fund from which benefits derive does not establish the benefits as a collateral source. KCS cites no authority for its assertion, which seems to us generally contrary to the language of 45 U.S.C. § 55 and cases applying it. *See, e.g., Folkestad*, 813 F.2d at 1380.

---

[9]The 1979 Supplemental Sickness Benefit Agreement contained a paragraph stating that the parties did not intend benefits under the plan to duplicate any amount recovered for loss of wages, but instead intended that benefits under the plan would satisfy any right of recovery for loss of wages against the employing railroad to the extent of benefits paid and would be offset against any such right of recovery. The corresponding paragraph from the 1973 agreement is quoted in *Strong*, 907 F.2d at 709.

KCS also points out that the Benefit Plan is "overwhelmingly funded" by the employer, and asserts that Nussbeck's premium for participation in the plan was lower because of the large size of the insured group, a factor that KCS sees as a subsidy to Nussbeck and other ARASA members. Such an unquantified benefit to Nussbeck does not render the payments made to him sums contributed or paid by his employer, for purposes of 45 U.S.C. § 55.

Concluding that the trial court did not err in denying KCS setoff of amounts paid Nussbeck under the Supplemental Sickness Benefit Plan, we overrule appellant's issue and affirm the trial court's judgment.

James T. Campbell
Justice